## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **JOHN TYSON,** **Individually and as Administrator of** **the Estate of FRANK E. TYSON,** **Deceased,** | ) ) ) ) | CASE NO.: |
| | ) | |
| Plaintiff, | ) ) | JUDGE: |
| v. | ) ) ) | |
| | ) | **COMPLAINT** |
| **CITY OF CANTON; OFFICER** **BEAU SCHOENEGGE; OFFICER** **CAMDEN BURCH; LIEUTENANT** **ERIC VANOVER; LIEUTENANT** **ANTHONY BIRONE; CAPTAIN** **LESTER MARINO; JOHN D.** **GABBARD, CHIEF OF POLICE;** **KIMBERLY MILLER; ERIC METZ;** **STEVEN SWIHART; CAPTAIN** **JAMES COOMBS; GUY** **GEARHART; PAUL PERDICCAS** | ) ) ) ) ) ) ) ) ) ) ) ) | **(Jury Demand Endorsed Hereon)** |
| Defendants. | ) ) | |

Now comes Plaintiff John Tyson ("Plaintiff"), individually and as Administrator of the Estate of Frank E. Tyson, Deceased, by and through undersigned counsel, and for his Complaint against Defendants, states as follows:

### I.     INTRODUCTION

1.     This action arises out of the positional asphyxiation and senseless killing of Frank E. Tyson ("Decedent Tyson") on April 18, 2024, in Canton, Ohio, at the hands of two Canton Police Officers who used excessive force and killed Decedent Tyson in the same manner that Minneapolis police killed George Floyd in 2020.

1

2. On behalf of Decedent Tyson, Plaintiff seeks damages pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for the deprivation of Decedent Tyson's clearly established rights as secured by the Fourth and Fourteenth Amendments to the United States Constitution against: (1) Defendant City of Canton ("Defendant Canton") for its unconstitutional policies, customs and/or practices under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), and its progeny, (2) Defendants Beau Schoenegge ("Defendant Schoenegge") and Camden Burch ("Defendant Burch"), individually and in their respective capacities as Canton Police Officers, for their respective violations of Decedent Tyson's right to be free from reckless conduct, needless violence, and the use of excessive force, (3) the supervisors of Defendants Schoenegge and Burch for their roles in the constitutional violation of Decedent Tyson, and (4) Canton EMS/Fire officials for the reckless, willful, wanton, and/or deliberately indifferent failure to render medical care.

## II.     JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 to redress a deprivation of the Fourth and Fourteenth Amendment rights of Decedent Tyson.

4. Venue is proper in this Court under 28 U.S.C. §1391, because all incidents, events, and occurrences giving rise to this action occurred in the Northern District of Ohio and, upon information and belief, all the parties reside in this judicial district.

## III.     PARTIES

5. At all times relevant to this action, Plaintiff was, and is, a resident of the City of Canton, Stark County, Ohio.

6. Plaintiff was appointed by the Stark County Probate Court on December 23, 2024, as the Administrator for the Estate of Decedent Tyson.

7. Defendant City of Canton is a municipal corporation located in Stark County, State

2

of Ohio and, at all times relevant to this action, employed Defendants Schoenegge and Burch as employees within the City of Canton Police Department.

8. Defendant City maintains an active police force and emergency response department.

9. Regarding its police department, Defendant City lists as one of its guiding principles: "To act with urgency to resolve conflicts in the community, applying common sense, fairness, and honesty in our service."

10. The Directory of Public Safety and Chief of Police for Defendant City issue "Canton Police Department Rules and Regulations," to define the police purpose and the duties and conduct of all members of the Canton Police Department.

11. The Canton Police Department Rules and Regulations are organized in a manual.

12. According to the Foreword to the manual containing the Canton Police Department Rules and Regulations:

    a. "Employees [of the City of Canton Police Department] are presumed to have knowledge of federal, state, and municipal ordinances in force, as well as the Rules and Regulations within this manual."

    b. "It shall be the responsibility of all employees to become thoroughly familiar with the contents of this manual."

13. According to page 4 of the Canton Police Department Rules and Regulations:

    a. "The law enforcement officer shall assiduously apply himself[/herself] to the study of the principles of the laws which he[/she] is sworn to uphold."

    b. "The first duty of a law enforcement officer, as upholder of the law, is to know its bounds upon him[/her] in enforcing it."

3

    c.   The law enforcement officer "will make certain of his[/her] responsibilities in the particulars of their enforcement, seeking aid from his[/her] superiors in matters of technicality or principle when these are not clear to him[/her]."

14. According to page 15 of the Canton Police Department Rules and Regulations:

    a.   Supervisory officer is defined as, "Any member of the Police Department who attains the rank of Sergeant or above."

15. According to page 5 of the Canton Police Department Rules and Regulations:

    a.   Defendant police officers "shall be mindful of [their] responsibilit[ies] to pay strict attention to the selection of means in discharging the duties of [their] office[s]."

    b.   "Violations of law or disregard for public safety and property on the part of an officer are intrinsically wrong."

16. According to page 19 of the Canton Police Department Rules and Regulations:

    a.   "The words 'shall' and 'will' as used herein shall indicate that the action required is mandatory."

17. According to page 5 of the Canton Police Department Rules and Regulations, Defendant police officers:

    a.   Will "conduct [their] private [lives] that the public will regard [them] as an example of stability, fidelity, and morality."

    b.   Shall "deal with individuals of the community in a manner calculated to instill respect for its laws and its police service."

    c.   Shall "use powers of arrest strictly in accordance with the law and with due regard to the rights of the citizens concerned."

   d.  Shall "conduct [their] official [lives] in such a manner as will inspire confidence and trust."

   e.  Shall "at all times, have a clear appreciation of his responsibilities and limitations regarding detention of [a law] violator."

   f.  Shall conduct themselves "in such a manner as will minimize the possibility of having to use force."

18. Defendants violated the aforesaid Canton Police Department Rules and Regulations.

19. Defendant Schoenegge is/was a natural person residing in Stark County, Ohio, and is/was an employee within the City of Canton Police Department.

20. Defendant Burch is/was a natural person residing in Stark County, Ohio, and is/was an employee within the City of Canton Police Department.

21. Defendant Lieutenant Eric Vanover is/was a natural person residing in Stark County, Ohio, and is/was an employee within the City of Canton Police Department and acted as the direct supervisor to Defendants Schoenegge and Burch.

22. Defendant Lieutenant Anthony Birone is/was a natural person residing in Stark County, Ohio, and is/was an employee within the City of Canton Police Department and acted as the direct supervisor to Defendants Schoenegge and Burch.

23. Defendant Captain Lester Marino is/was a natural person residing in Stark County, Ohio, and is/was an employee within the City of Canton Police Department and acted as the direct supervisor to Defendants Schoenegge and Burch.

24. Defendant Chief John D. Gabbard ("Defendant Chief Gabbard," and "Defendant Chief") is/was a natural person residing in Stark County, Ohio, and is/was an employee within the City of Canton Police Department, and the acting Chief of Police and top decision maker and policy

5

maker at the City of Canton regarding the Canton Police Department and all employees thereof.

25.     Defendant Kimberly Miller is/was a natural person residing in Stark County, Ohio, and is/was an employee within the City of Canton Fire Department.

26.     Defendant Eric Metz is/was a natural person residing in Stark County, Ohio, and is/was an employee within the City of Canton Fire Department.

27.     Defendant Steven Swihart is/was a natural person residing in Stark County, Ohio, and is/was an employee within the City of Canton Fire Department.

28.     Defendant Captain James Coombs is/was a natural person residing in Stark County, Ohio, and is/was an employee within the City of Canton Fire Department.

29.     Defendant Guy Gearhart is/was a natural person residing in Stark County, Ohio, and is/was an employee within the City of Canton Fire Department.

30.     Defendant Paul Perdiccas is/was a natural person residing in Stark County, Ohio, and is/was an employee within the City of Canton Fire Department.

31.     Defendant Akbar Bennett is/was a natural person residing in Stark County, Ohio, and is/was an employee within the City of Canton Fire Department as acting Chief of the Fire Department and is responsible for all EMS training and operations for the department.

32.     Redress is being sought from all Defendants in their official and individual capacities, and all Defendants were acting under and/or outside of color of law and/or pursuant to the policies, customs, and/or usages of the City of Canton and/or the Canton Police Department.

## IV.     STATEMENT OF FACTS

33.     All preceding paragraphs are incorporated as if fully re-written herein.

34.     On April 18, 2024, Decedent Tyson is walking on foot at 1700 Sherick Road SE, in Canton, Ohio.

35.     Decedent Tyson enters Amvets Post 124, located at 1822 Sherrick Road SE, in Canton, Ohio.

36.     After entering Amvets Post 124, Decedent Tyson is "buzzed in" to the bar section of the building by an employee of the establishment.

37.     Decedent Tyson asks patrons within the bar for help, directing them to call the Stark County Sheriff.

38.     After approximately 10 minutes, Canton police officers arrive at the scene.

39.     Defendants Schoenegge and Burch enter the Amvets Post 124, wearing police uniforms.

40.     Decedent Tyson is standing in front of the bar, holding a cellphone.

41.     Decedent Tyson makes no sudden movements towards the officers, no verbal threats, and no threatening gestures towards the officers.

42.     Defendants Schoenegge and Burch immediately approach Decedent Tyson. Decedent Tyson states: "Get the Sheriff" and "you ain't killing me tonight."

43.     Without trying to talk with Decedent Tyson or get an understanding of what was going on with him, Defendants Schoenegge and Burch grab Decedent Tyson's arms.

44.     Decedent Tyson yells, "No, they're trying to kill me!" and "Call the Sheriff's Department!"

45.     Defendants Schoenegge and Burch force Decedent Tyson to the ground by lifting his leg and holding his arms.

46.     Decedent Tyson states, "they're trying to kill me," and "why are you trying to kill me?"

47.     As Defendants Schoenegge and Burch take Decedent Tyson to the ground, Decedent

Tyson continues to say, "call the Sheriff."

48.  Decedent Tyson is lying on his stomach and chest on the ground.

49.  Defendants Schoenegge and Burch are on top of Decedent Tyson and pull his arms behind his back to place handcuffs on him.

50.  Defendant Schoenegge states to Decedent Tyson "you're going to get sprayed."

51.  Defendant Burch immediately says to Defendant Schoenegge, "don't spray him."

52.  Defendants Schoenegge and Burch place Decedent Tyson in handcuffs.

53.  Defendant Schoenegge kneels on Decedent Tyson's back.

54.  Defendant Burch kneels on the dorsal aspect of Decedent Tyson's neck.

55.  Decedent Tyson gasps, "I can't breathe…I can't breathe…I can't breathe"

56.  Defendant Schoenegge states "stop fighting!"

57.  Defendants' knees remain on Decedent Tyson.

58.  Decedent Tyson, struggles to speak and repeats, "I can't breathe. I can't…I can't… You're on my neck…I can't breathe."

59.  Decedent Tyson again says, "I can't breathe." Defendant Schoenegge replies "You're fine."

60.  Defendant Schoenegge and/or Defendant Burch say, "Shut the fuck up."

61.  Decedent Tyson remains in the prone position, motionless.

62.  Laughing, Defendant Schoenegge states to a patron of the bar, "I've always wanted to be in a bar fight. I don't know if this counts."

63.  Defendants Schoenegge and Burch talk with people in the Amvets for over 5 minutes.

64.  Simultaneously, Decedent Tyson lays in the prone position, motionless.

65.  Referring to Decedent Tyson, Defendant Schoenegge states "he might be out."

66. Defendant Schoenegge and/or Burch asks, "Is he breathing"?

67. Defendant Burch places his fingers on Decedent Tyson's neck.

68. Defendant Burch then walks away from Decedent Tyson.

69. Decedent Tyson remains in the prone position, lying motionless on the ground.

70. After at least 3 more minutes, Defendants Schoenegge and/or Burch walk over to Decedent Tyson and remove the handcuffs from his wrists.

71. Defendant Schoenegge and/or Burch call dispatch and report an unresponsive male.

72. Defendant Schoenegge and/or Defendant Burch asks, "does he have a pulse?" to which the other responds "I don't feel one."

73. Defendants Schoenegge and/or Burch then roll Decedent Tyson over onto his back.

74. Defendant Schoenegge and/or Defendant Burch says, "I don't know if I can feel a pulse."

75. Decedent Tyson is not moving or breathing.

76. Defendant Burch begins performing chest compressions on Decedent Tyson, periodically asking where the paramedics are.

77. Defendants Kimberly Miller and/or Eric Metz and/or Steven Swihart and/or James Coombs and/or Guy Gearhart and/or Paul Perdiccas (together referenced as the "EMS/Fire Defendants") arrive.

78. When the EMS/Fire Defendants arrive, Decedent Tyson is unconscious and in cardiac distress, and they are trained to know that in this situation they must provide proper, immediate life-saving efforts to resuscitate him and/or save his life.

79. EMS/Fire Defendants place AED defibrillator pads on Decedent Tyson and perform chest compressions, but there is no indication they activate the defibrillator.

80. EMS/Fire Defendants ask Defendant Schoenegge and/or Defendant Burch if they laid Decedent Tyson on the ground face down or face up.

81. Defendant Schoenegge and/or Defendant Burch respond, "face down. He was sideways and then we got him on his stomach."

82. EMS/Fire Defendants place Decedent Tyson onto a stretcher.

83. The EMS/Fire Defendants do not provide or follow Advanced Cardiac Live Support (ACLS) protocol.

84. When Decedent Tyson is removed from the Amvets on a stretcher, his skin shows obvious evidence that his heart is not perfusing blood, and the EMS/Fire Defendants are trained (and/or are not trained) to recognize this life-threatening situation.

85. At all times throughout their interaction with Decent Tyson, the EMS/Fire Defendants provide no medication to start or excite Decedent Tyson's heart.

86. The American Heart Association (AHA) developed guidelines for CPR that provide evidence-based recommendations on managing cardiovascular emergencies and cardiac arrest.

87. These guidelines date back to 1966 and have been periodically updated by the AHA based on emerging evidence and trials.

88. The EMS/Fire Defendants are all trained in ACLS.

89. Pleading in the alternative, Defendant City of Canton failed to educate and/or train the EMS/Fire Defendants in ACLS and said Defendants intentionally and wantonly operate as EMS/Fire personnel within the State of Ohio, despite knowing they are untrained to handle the circumstances they encountered with Decedent Tyson.

90. When they arrived on scene, the EMS/Fire Defendants chose to not provide an effective chain of survival ("ECOS") for Decedent Tyson.

91.     The ECOS process begins with immediate recognition of cardiac arrest, which the EMS/Fire Defendants failed to undertake and/or ignored the indications of cardiac arrest that they were trained to know.

92.     ECOS requires the activation of the emergency response system (ERS) which the EMS/Fire Defendants chose to ignore.

93.     The EMS/Fire Defendants failed to undertake and chose to ignore their training (and/or were not trained) regarding the deployment of technology methods to assist and manage a resuscitation effort for Decedent Tyson.

94.     Despite Decedent Tyson's dire medical situation, which the EMS/Fire Defendants were trained to recognize (and/or were not trained to recognize) including but not limited to indications that he was in cardiac distress, the EMS/Fire Defendants choose to ignore his condition and/or not use the full extent of their tools, knowledge, and training to try and revive or assist Decedent Tyson.

95.     Decedent Tyson is pronounced dead about 15 minutes following his arrival to the hospital.

96.     Decedent Tyson's death certificate announces the cause of death as "cardiopulmonary arrest in association with physical altercation and prone restraint."

97.     While Plaintiff avers that the actions and/or failures to act of Defendants Burch, Schoenegge, the City of Canton, Defendant Chief, and the other named Defendants' actions and inactions as detailed herein were the proximate cause of the death of Decedent Tyson, Plaintiff also avers that the intentional and wanton actions and refusals to act of Defendants EMS/Fire and Defendant Bennett, the Fire Chief, were a cause of Decedent Tyson's death and/or created a loss of chance that Decedent Tyson would have survived had Defendants EMS/Fire take appropriate action,

11

which they did not.

98. Within months of Decedent Tyson's death, Defendants Schoenegge and/or Burch are charged with homicide.

99. As of the drafting of this Complaint, they await prosecution for killing Decedent Tyson.

### V.     CLAIMS FOR RELIEF

#### COUNT I
#### 42 U.S.C. § 1983 - Excessive Force
#### (Against Defendants Schoenegge and Burch)

100. All preceding paragraphs are incorporated as if fully re-written herein.

101. This claim is brought pursuant to Title 42 U.S.C. § 1983 and Title 42 U.S.C. § 1988.

102. Title 42 U.S.C. §1983 states, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

103. Title 42 U.S.C. § 1988 states in relevant part that in any action or proceeding to enforce a provision of 42 U.S.C. §1983, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

104. Accordingly, Plaintiff seeks fees as the prevailing party in this case.

105. Plaintiff also seeks expert fees as part of the attorney's fee award sought herein.

106. The Fourth Amendment to the United States Constitution states, in relevant part, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."

12

107.    For decades, the United States Supreme Court has interpreted the Fourth Amendment to the United States Constitution to prohibit a police officer's use of excessive force during the arrest of an unarmed citizen. *See, e.g., Tennessee v. Garner*, 471 U.S. 1, 2 (1985). ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so.").

108.    While acting under color of state law, Defendants Schoenegge and Burch deprived Decedent Tyson of his well-established right to be free from excessive force, per the authority cited herein.

109.    At all times relevant to this action, Plaintiff asserts that Decedent Tyson had the clearly established constitutional right not to be subjected to excessive force while posing no threat of harm to the Defendants or others.

110.    In other words, on April 18, 2024, Defendants Schoenegge and Burch were only permitted to use the amount of force necessary under the circumstances to arrest and/or detain Decedent Tyson.

111.    At all times relevant to this matter, Defendants Schoenegge and Burch were clothed with the authority of the state and misused that authority.

112.    In this case, Defendants Schoenegge and Burch used excessive force when they seized the person of Decedent Tyson, to wit:

    a. Defendants, without any words exchanged, took Decedent Tyson to the ground by grabbing his arms and lifting his legs;

    b. Defendants intentionally placed their knees on Decedent Tyson's back and neck while he was handcuffed and in the prone position posing no threat of harm;

c. Defendants kept their knees on Decedent Tyson while he was handcuffed and in the prone position and unable to breathe, despite hearing him cry out for breath;

d. Defendants left Decedent Tyson in the prone position and unable to breathe, thereby causing him to suffer positional asphyxiation, a lethal condition resulting from the inability of the diaphragm to expend the chest cavity and draw in air as Tyson laid prone on the floor, a hard surface.

113. Defendants Schoenegge and Burch used force that was objectively unreasonable, because, during his seizure, among other acts of violence, they deprived him of an opportunity to breathe.

114. Defendants Schoenegge and Burch engaged in the above acts with a callous or reckless disregard for Decedent Tyson's federally protected rights, because they were trained to know the lethality of positional asphyxiation (and the position they left Decedent Tyson in) when they encountered him, arrested him, and left him with his hands behind his back as he lay prone on a hard floor); but they chose to ignore their training and mistreat Decedent Tyson by leaving him prone on the floor with his hands behind his back – at all times unable to breathe.

115. Pleading in the alternative, Plaintiff avers Defendants Schoenegge and Burch engaged in the above acts with a callous or reckless disregard for Decedent Tyson's federally protected rights, because they were not trained to know the lethality of positional asphyxiation (and the position they left Decedent Tyson in when they encountered him, arrested him, and left him with his hands behind his back as he lay prone on a hard floor), but they still chose to arrest and mistreat Decedent Tyson by leaving him prone on the floor with his hands behind his back – at all times unable to breathe.

116. By reason of the foregoing, Defendants Schoenegge and Burch used excessive force

and killed Decedent Tyson, thereby depriving Decedent Tyson of the rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourth (the right to be secure against unreasonable searches and seizures) and Fourteenth Amendments (each citizen has the right to life and liberty) of the United States Constitution to be free from gratuitous and excessive force. Defendants' conduct manifested deliberate indifference to Decedent Tyson's constitutional rights.

117. As a direct and proximate result of Defendants' conduct, as set forth above, Plaintiff has been damaged, including but not limited to: Decedent Tyson was choked and suffocated and lived with fear and conscious knowledge of his painful and immediately impending death prior to dying, Plaintiff's family was destroyed, and all have endured pain, anguish, embarrassment, humiliation, feelings of powerlessness, harm to self-esteem, emotional distress, fear, anxiety, emotional agony, loss of support, loss of companionship, loss of sense of personal safety, dignity, and legal fees and costs.

**COUNT II**
**42 U.S.C. § 1983 – Denial of Medical Care**
**(Against Defendants Schoenegge and Burch and the EMS/Fire Defendants)**

118. All preceding paragraphs are incorporated as if fully re-written herein.

119. This claim is brought pursuant to Title 42 U.S.C. § 1983 and Title 42 U.S.C. § 1988.

120. Title 42 U.S.C. §1983 states, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

121. For decades, the United States Supreme Court has interpreted the Fourteenth

Amendment to the United States Constitution to guarantee the well-established substantive due process right of being protected from deliberate decisions and arbitrary actions of government officials that result in a deprivation of life. *See Daniels v. Williams*, 414 U.S. 327, 331-332 (1986).

**Police Officer Defendants**

122.    While acting under the color of state law, Defendants Schoenegge and Burch deprived Decedent Tyson of his well-established right to be free from deliberate decisions and arbitrary actions of government officials that result in a deprivation of life.

123.    In other words, on April 18, 2024, Defendants Schoenegge and Burch knew that Decedent Tyson was in serious medical need, to wit:

a.    Defendants Schoenegge and Burch observed Decedent Tyson experiencing a mental crisis;

b.    Defendants Schoenegge and Burch heard Decedent Tyson say that he could not breathe on numerous occasions;

c.    Defendants Schoenegge and Burch heard Decedent Tyson gasping for air and struggling to breathe;

d.    Defendants Schoenegge and Burch heard Decedent Tyson's labored breathing;

e.    Defendants Schoenegge and Burch heard Decedent Tyson cry out in pain;

f.    Defendants Schoenegge and Burch observed Decedent Tyson lying motionless on the ground while in the prone position;

g.    Defendants Schoenegge and Burch understood that while Decedent Tyson was in their possession and under their control, Decedent Tyson was no longer breathing;

h.    Defendant Burch felt Decedent Tyson's neck for a pulse and then walked away from Decedent Tyson without taking further action.

    i.   Defendants Schoenegge and Burch chose to do nothing in response to seeing Decedent Tyson's lifeless body – instead they spoke and/or joked with patrons at the Amvets;

124. Decedent Tyson's need for medical care was so serious and so obvious that even a reasonable layperson would have easily recognized the necessity for adjusting his position on the floor and/or providing him with life-sustaining assistance.

125. At all times during his seizure and arrest, Decedent Tyson was in the physical custody of the police officer Defendants and wholly dependent upon them to breathe, and thus live, as he lay bound on the hard floor of the Amvets.

126. Life sustaining and/or resuscitation techniques, including but not limited to rolling Decedent Tyson on his side so he can breathe easily and freely while his hands are bound behind his back during an arrest, are necessary medical services that all competent law enforcement are trained to follow.

127. Rather than provide Decedent Tyson an opportunity to breathe freely and easily, and rather than provide necessary lifesaving or resuscitation techniques when those become obvious while they possessed the person of Decedent Tyson, Defendants Schoenegge and Burch deliberately choose to do nothing, except use profanity, make jokes, talk with people at the Amvets, and otherwise ignore Decedent Tyson's need to breathe.

128. Rather than provide Decedent Tyson with necessary lifesaving or resuscitation techniques while they possessed the person of Decedent Tyson, Defendants Schoenegge and Burch deliberately ignored the clear and visible objective signs of Decedent Tyson's serious medical need.

129. Rather than provide Decedent Tyson with the necessary life-preserving assistance of any kind while they possessed and controlled the person of Decedent Tyson, Defendants Schoenegge

and Burch, without checking on Decedent Tyson's wellbeing, continued to leave him prone on the hard Amvets floor, thus deploying excessive force against him as they told him he was "fine" and "shut the fuck up" during his arrest and seizure.

130. Defendants Schoenegge and Burch, who personally observed and listened to Decedent Tyson as he stated that he could not breathe and exhibited clear, objective signs of a serious need to breathe, knew or should have known that Decedent Tyson was suffering from a serious situation.

131. Defendants Schoenegge and Burch's deliberate and objectively unreasonable denial of life preserving assistance for Decedent Tyson violated his clearly established rights, as an arrestee, under the Fourteenth Amendment to the United States Constitution.

**EMS/Fire Defendants**

132. While acting under the color of state law, the EMS/Fire Defendants deprived Decedent Tyson of his well-established right to be free from deliberate decisions and arbitrary actions of government officials that result in a deprivation of life.

133. In other words, on April 18, 2024, the EMS/Fire Defendants knew that Decedent Tyson was in serious medical distress, to wit:

    a. Decedent Tyson is unconscious and in cardiac distress;

    b. Decedent is motionless;

    c. Decedent is prone with his hands behind his back;

    d. Decedent's hands are cuffed;

    e. Decedent is non-responsive to verbal commands;

    f. Decedent is not breathing.

134. The EMS/FIRE Defendants were trained and/or were not trained to know that in this

situation they must provide proper, immediate life-saving efforts to resuscitate him and/or save his life, but they chose to ignore his condition or not follow their training as stated herein.

135.    As a direct and proximate result of Defendants' conduct, as set forth above, Plaintiff has been damaged, including but not limited to: Decedent Tyson was choked and suffocated and lived with fear and conscious knowledge of his painful and immediately impending death prior to dying, Plaintiff's family was destroyed, and all have endured pain, anguish, embarrassment, humiliation, feelings of powerlessness, harm to self-esteem, emotional distress, fear, anxiety, emotional agony, loss of support, loss of companionship, loss of sense of personal safety, dignity, and legal fees and costs.

### COUNT III
### Willful and/or Wanton, Reckless Conduct
### (Against EMS/Fire Defendants)

136.    All preceding paragraphs are incorporated as if fully re-written herein.

137.    This claim is brought pursuant to Ohio law, per Ohio Revised Code § 2744.02, *et seq.*, including but not limited to § 2744.03(A)(6)(b).

138.    The EMS/Fire Defendants responded to a call involving Decedent Tyson, who was in a vulnerable medical condition requiring prompt emergency medical care.

139.    The EMS/Fire Defendants owed Decedent Tyson a duty to exercise care consistent with the standards applicable to emergency medical responders under Ohio law.

140.    Despite that duty, the EMS/Fire Defendants' conduct went beyond mere negligence and constituted willful, wanton, and/or reckless misconduct, including but not limited to:

    a.    Acting with a conscious disregard for or indifference to a known or obvious risk of harm to Decedent Tyson, *i.e.*, his death;

    b.    Failing to provide necessary medical assessment and/or treatment despite clear

indications of serious medical need for same;

c. Ignoring established EMS protocols and training;

d. Failing to transport Decedent Tyson to an appropriate medical facility when a reasonable EMS provider would have done so; and/or

e. Other acts or omissions demonstrating a complete failure to exercise any care toward Decedent Tyson under circumstances where there was a great probability that harm would result.

141. The EMS/Fire Defendants knew or should have known that its conduct would, in all probability, result in injury or death to Decedent Tyson, yet proceeded in conscious disregard of that risk.

142. The EMS/Fire Defendants' conduct was of such a character as to demonstrate a reckless indifference to the rights and safety of others, thereby justifying an award of punitive damages under Ohio law.

143. As a direct and proximate result of the EMS/Fire Defendants' willful and wanton misconduct, Decedent Tyson died and Plaintiff's family was destroyed, and all have endured pain, anguish, embarrassment, humiliation, feelings of powerlessness, harm to self-esteem, emotional distress, fear, anxiety, emotional agony, loss of support, loss of companionship, loss of sense of personal safety, dignity, and legal fees and costs.

### COUNT IV
### Supervisory Liability
### (Against Supervisory Defendants)

144. All preceding paragraphs are incorporated as if fully re-written herein.

145. This claim is brought pursuant to Title 42 U.S.C. § 1983 and Title 42 U.S.C. § 1988.

146. At all times relevant herein, Defendants Lieutenant Eric Vanover, Lieutenant

Anthony Birone, Captain Lester Marino, and/or Defendant Chief Gabbard (the "Supervisory Defendants") are direct supervisors and form part of the chain of command for Defendants Schoenegge and Burch.

147.     The Supervisory Defendants have supervisory authority over Defendants Schoenegge and Burch.

148.     At all times relevant herein, the Supervisory Defendants knew or reasonably should have known of, and/or participated in, and/or condoned, and/or ratified:

> a. Defendants Schoenegge and Burch takedown of Decedent Tyson without exchanging any words or giving him an opportunity to comply;
>
> b. Defendants Schoenegge and Burch intentionally placing their knees on Decedent Tyson while he was handcuffed and in the prone position posing no threat of harm;
>
> c. Defendants Schoenegge and Burch keeping their knees on Decedent Tyson while he was handcuffed and in the prone position and unable to breathe; and
>
> d. Defendants Schoenegge and Burch's deliberate indifference failing to provide any medical assistance to Decedent Tyson as he was in visible medical distress.

149.     The Supervisory Defendants knew or reasonably should have known that Defendants Schoenegge and Burch's acts and/or failures to act would likely cause the constitutional injury that befell Plaintiff and Decedent Tyson, to wit: by endorsing, promoting, encouraging, and/or not disciplining Defendants Schoenegge and Burch and/or by keeping them employed at the Canton Police Department, and/or under the circumstances detailed in this Complaint, Decedent Tyson was killed and Plaintiff lost Decedent Tyson as a result of Defendants' reckless, wanton, and/or willful actions which were endorsed, condoned, and/or ratified by the Supervisory Defendants.

21

150. The Supervisory Defendants had a duty and/or were required by his/their training to take action to discipline and/or otherwise prevent Defendants Schoenegge and Burch from engaging in the above-stated conduct.

151. Despite his/their knowledge of Defendants Schoenegge's and Burch's misconduct, as stated above, the Supervisory Defendants took no action, failed to impose reasonable discipline, including recommending and achieving termination of employment, failed to follow chain of command, failed to document the instances of misconduct, and/or otherwise abandoned his supervisory duties.

152. As a result of their failures and/or abandonment of their supervisory duties, as stated above, the Supervisory Defendants created an environment that condoned the aforementioned misconduct and perpetuated and/or facilitated and/or aided Defendants Schoenegge and Burch in their unreasonably violent and grotesque seizure of Decedent Tyson's person and the taking of his life when he posed no lethal threat to Defendants Schoenegge and Burch or anyone else at the time he was killed.

153. The Supervisory Defendants engaged in acts and omissions that were the product of a reckless or callous indifference to Decedent Tyson's constitutional rights, to wit:

a. The Supervisory Defendants trained, endorsed, and/or condoned Defendants Schoenegge and Burch's excessive and unreasonable force against arrested subjects in the manner detailed above, *i.e.*, when the subject had no weapon nor posed any direct threat to them or the life of another;

b. The Supervisory Defendants trained, endorsed, and/or Defendants Schoenegge and Burch's failure to ascertain medical assistance for an arrestee in visible medical distress;

22

c.  The Supervisory Defendants trained, endorsed, and/or condoned Defendants Schoenegge and Burch's deliberate indifference to Decedent Tyson as they ignored his consistent pleas for help; and

d.  The Supervisory Defendants continue to condone the conduct and actions of Defendants Schoenegge and Burch as stated above.

154.  By their acts and omissions as stated above, Defendants Schoenegge and Burch and the Supervisory Defendants in fact caused Plaintiff's constitutional deprivation: to wit, Decedent Tyson was seized/killed with lethal force while unarmed in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

155.  As a direct and proximate result of the Supervisory Defendants' conduct, as set forth above, Plaintiff has been damaged, including but not limited to: Decedent Tyson was choked and suffocated and lived with fear and conscious knowledge of his painful and immediately impending death prior to dying, Plaintiff's family was destroyed, and all have endured pain, anguish, embarrassment, humiliation, feelings of powerlessness, harm to self-esteem, emotional distress, fear, anxiety, emotional agony, loss of support, loss of companionship, loss of sense of personal safety, dignity, legal fees and costs.

### COUNT V
**Municipal Liability pursuant to *Monell***
**(Against Defendant City of Canton)**

156.  All preceding paragraphs are incorporated as if fully re-written herein.

157.  This claim is brought pursuant to Title 42 U.S.C. § 1983 and Title 42 U.S.C. § 1988.

158.  Municipal bodies, such as Defendant City of Canton, and/or by and through their top policy makers, such as Defendant Chief Gabbard, are liable for constitutional violations under 42 U.S.C. § 1983 when execution of their official policies or customs deprives an individual of rights

23

protected by the Constitution. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).

159. Official policies or customs can result from: (a) a formal regulation or policy statement; (b) an informal custom amounting to a widespread practice that, although not authorized by written law or express policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (c) the decisions of employees with final policymaking authority; (d) the ratification of such final policymakers of the decisions, and the basis for them, of subordinates to whom authority was delegated subject to those policymakers' review and approval; or the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

160. A municipality is liable under § 1983 when its agency's policy or custom, as evident from the allegation set forth above and below, is "closely related" to the ultimate constitutional injury suffered by Decedent and/or Plaintiff, and/or causes or occasions the constitutional violation. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

**Unwritten Policy or Custom**

161. Defendant City of Canton retains an armed police force, the Canton Police Department, with the power to arrest citizens, and it retains a emergency fire department to render emergency, life-saving assistance.

162. Defendant Chief Gabbard oversees the Canton Police Department, and he acts as the top policymaker and supervisor for the Canton Police Department; and Defendant Chief Bennett oversees the Canton Fire Department, and he acts as the top policymaker and supervisor for the Canton Fire Department.

24

163. Both Defendant Chiefs are responsible for adopting, implementing, promulgating, and enforcing the policies, customs, and practices of the Canton Police and Fire Departments as applicable to the officers under each of their command, and their decisions and acts can be fairly attributed to those of the Canton Police and Fire Department and/or the City of Canton itself.

164. Defendant Chief Gabbard and Chief Bennett are ultimately responsible for the assignment of personnel for training purposes as well as having the final say as to what training does or does not occur for officers at the Canton Police and Fire Departments.

165. Defendant Chief Gabbard and Chief Bennett are ultimately responsible for the discipline of officers and fire fighters/EMS personnel as well as having the final say as to what discipline does or does not occur for personnel. Under their respective commands.

166. Defendant City of Canton and Defendant Chief Gabbard is/are aware of a history and pattern of violent and unconstitutional police action at the Canton Police Department, where officers of the Canton Police Department engage in violent behavior that involve excessive force in violation of the Fourth Amendment, to wit:

   a. On New Year's Day in 2022, a Canton Police Officer shot and killed a citizen who was celebrating the holiday with his family. Litigation for this incident is ongoing in this Court: *Williams v. City of Canton, et al.*, 5:2023-cv-00655;

   b. On August 24, 2024, a Canton Police Officer kicked in the head a defenseless and compliant citizen;

   c. On December 5, 2023, a Canton Police Officer shot and killed a citizen that was walking away from him and not an immediate threat of deadly herm to himself or others. See *White v. City of Canton, et al.*, 5:2025-cv-02610.

d. Multiple Canton Police Officers have been involved in other incidents of excessive force against Canton citizens, see *Conver, et al. v. City of Canton, et al.*, 5:2025-cv-00866; *Gallagher v. City of Canton, Ohio et al.*, 5:2025-cv-00878.

167. Based on national data collected, killings by Canton police officers occur at a higher rate than nearly 90% of police departments throughout the United States.

168. The ongoing pattern, custom, and policy of excessive force within the Canton Police Department is so apparent that the department implemented further de-escalation training this past year.

169. Defendant City of Canton endorses and/or implements and/or acquiesces in a long-standing and unwritten policy or custom of shielding officers from consequences for their application of violence and/or use of excessive force and/or ignoring the use of excessive force on citizens during arrests, to wit:

a. For years prior to Decedent Tyson's death, Defendant City of Canton and/or Defendant Chief Gabbard acquiesced to a culture that accepts excessive force as a condition of police work at the Canton Police Department, to the extent that officers are trained and aided on how to avoid prosecution for their violent actions by re-phrasing and artfully summarizing their violent actions and encounters with citizens in police documentation;

b. For years prior to Decedent Tyson's death, Defendant City of Canton and/or Defendant Chief Gabbard acquiesced to a culture of violence at the Canton Police Department by abandoning its/his duty under the Constitution for the State of Ohio and/or the Constitution of the United States to exercise control over the Canton Police Department by avoiding any study of the number of excessive

force cases and violence involved in the arrest of citizens, by the Canton Police Department; and/or

c. For years prior to Decedent Tyson's death, Defendant City of Canton and/or Defendant Chief Gabbard perpetuated a culture of violence in the Canton Police Department by abandoning its/his duty under the Constitution for the State of Ohio to remove deputies and/or exercise control over the Canton Police Department by allowing officers to restrict and/or interfere with and/or hamper the internal oversight activities of the Canton Police Department.

170. The unwritten policy and/or customs stated herein is/are known to Defendant City of Canton and/or Defendant Chief Gabbard, who approved, benefitted from, ratified, encouraged, sanctioned, and/or promoted this policy or custom throughout the Canton Police Department.

171. Following the death of Decedent Tyson, Defendant City of Canton and/or Defendant Chief Gabbard continue to approve, ratify, encourage, sanction, and/or promote the policy or custom of ignoring excessive force and fostering a culture of violence as he/they express support for Defendants Schoenegge and Burch's actions regarding the death of Decedent Tyson.

172. To date, Defendant City of Canton and/or Defendant Chief Gabbard have never initiated any meaningful policy reviews or culture reforms regarding excessive force within the Canton Police Department.

173. The aforesaid unwritten policies or customs put Decedent, Plaintiff, and the general public at unreasonable risk of grievous bodily harm, injury, or death.

174. The aforesaid unwritten policies or customs as shown by the pattern of unreasonably violent conduct and events stated above (and reinforced by the lack of meaningful discipline) were

27

"closely related" to the ultimate constitutional injury suffered by Decedent and/or Plaintiff and/or were in fact a cause of the death of Decedent.

175.    At all times relevant hereto, Defendant City of Canton initiated, authorized, condoned, ratified, and/or encouraged the aforesaid unwritten policies or customs.

176.    Upon information and belief, Defendant Chief Gabbard and others from the Canton Police Department reviewed documents, discussed, and/or received details and information at the Canton Police about the manner in which officers deploy unreasonable force against citizens, including, without limitation, the manner in which Defendants killed Decedent while he posed no immediate threat.

177.    Upon information and belief, Defendant Chief Gabbard and others from the Canton Police Department were thus on actual and/or constructive notice of the aforesaid unconstitutional acts which form the unconstitutional policies or customs alleged herein - but did nothing about them.

**Objective Indifference - Failure to Train or Discipline**

178.    All preceding paragraphs are incorporated as if fully re-written herein.

179.    Upon information and belief, Defendant City of Canton and Chief Gabbard do not adequately train regarding the use of force, to wit:

  a. Defendants did not train, promulgate and/or enforce a use of force policy at the Canton Police Department that trained officers as to the appropriate level of force to use in the situation encountered by Defendants Schoenegge and Burch;

  b. Defendants did not train, promulgate and/or enforce proper de-escalation techniques to use in the situation encountered by Defendants Schoenegge and Burch;

28

      c.   Defendants did not train, promulgate and/or enforce proper arrest techniques to use in the situation encountered by Defendants Schoenegge and Burch.

180. Upon information and belief, Defendant City of Canton and Chief Bennett do not adequately train regarding emergency response care, to wit:

      a.   On April 18, 2024, the EMS/Fire Defendants were not trained to know that Decedent Tyson was in serious medical distress or to act on that distress, including but not limited to recognizing and taking action on the signs of Decedent Tyson's distress, to wit:

          i.   Decedent Tyson is unconscious and in cardiac distress;

          ii.   Decedent is motionless;

          iii.   Decedent is prone with his hands behind his back;

          iv.   Decedent's hands are cuffed;

          v.   Decedent is non-responsive to verbal commands;

          vi.   Decedent is not breathing.

181. Upon information and belief, Defendant City of Canton and Defendant Chief Gabbard do not routinely discipline Canton Police Department officers, such as Defendants Schoenegge and Burch, who use excessive force on citizens.

182. Upon information and belief, Defendant City of Canton and Defendant Chief Bennett do not routinely discipline Canton Fire Department personnel, such as the EMS/Fire Defendants in this case, who chose to ignore Decedent Tyson's need for emergency medical care.

183. Upon information and belief, Defendant City of Canton and Defendant Chief Gabbard do not discipline Canton Police Department officers, such as Defendants Schoenegge and

Burch, who fail to de-escalate situations where persons, like Decedent, are experiencing a mental crisis and posing no immediate threat.

184. The need for said training and discipline, including termination from employment, as aforesaid, is so obvious that the failure of Defendants to conduct said training and discipline establishes Defendants' objective deliberate indifference to the constitutional rights of Plaintiff and Decedent and all who live in the City of Canton.

185. As a direct and proximate result of Defendants' acts or failures to act and/or written and/or unwritten policies or customs and failure to train and discipline as aforesaid: Decedent Tyson was choked and suffocated and lived with fear and conscious knowledge of his painful and immediately impending death prior to dying, Plaintiff's family was destroyed, and all have endured pain, anguish, embarrassment, humiliation, feelings of powerlessness, harm to self-esteem, emotional distress, fear, anxiety, emotional agony, loss of support, loss of companionship, loss of sense of personal safety, dignity, and legal fees and costs.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants, jointly and severally, for not less than $13,000,000.00, including but not limited to:

A. Compensatory and consequential damages in an amount to be determined by the Court in excess of the Court's jurisdictional amount;

B. Punitive damages in an amount to be determined at trial, for the willful, reckless, and malicious conduct of Defendants;

C. Equitable relief, including that Defendant Canton be made to adopt an appropriate policy to prevent future instances of the type of misconduct described herein;

D. Attorneys' fees and all costs, including expert fees, associated with this action

pursuant to 42 U.S.C. 1988; and

E.        Any and all other relief that this Court deems equitable, just and proper.

## VII.    JURY DEMAND

Plaintiff respectfully demands a trial by jury of the within matter.

Respectfully submitted,

*/s/ Robert F. DiCello*
Robert F. DiCello (0072020)
Kenneth P. Abbarno (0059791)
Justin J. Hawal (0092294)
Peter C. Soldato (0099356)
Joseph T. Frate (0101377)
Jordyn A. Parks (00102573)
**DiCELLO LEVITT, LLP**
8160 Norton Parkway, Third Floor
Mentor, Ohio 44060
Tel.: 440-953-8888
rfdicello@dicellolevitt.com
kabbarno@dicellolevitt.com
jhawal@dicellolevitt.com
psoldato@dicellolevitt.com
jfrate@dicellolevitt.com
jparks@dicellolevitt.com

Benjamin Crump*
Chance Lynch*
**BEN CRUMP LAW, PLLC**
122 South Calhoun Street
Tallahassee, Florida 32301
Tel.: (800) 691-7111
ben@bencrump.com
chance.l@bencrump.com

*Counsel for Plaintiff*
*To seek admission *pro hac vice*

31